JUDGE HARDIN
delivered the opinion op the oodrt:
Thomas G. Pettit died in 1856 possessed of a large estate, partly consisting of about five hundred and sixty acres of land and forty-four slaves. He left a widow to whom he devised his estate for her life or until she should marry again, and afterwards to be equally divided among his eight children, viz: John G. Pettit, Lydia Cook, wife of James A. Cook, George Pettit, Eliza Pettit, Thomas *609 Pettit, Adaline Pettit, Susan Pettit, and Elizabeth Pettit. Shortly after the testator’s death, his widow, Mary Pettit, died intestate, leaving her children her heirs, who were the devisees in remainder under her husband’s will.
In 1857 said John G. Pettit for himself, and as guardian of said George Pettit, and James A. Cook, as the husband of his said wife (who was yet an infant), and as guardian of Eliza Pettit, and Thomas Pettit, and-Will. H.. Miller, as guardian of Adaline Pettit, Susan Pettit, and Elizabeth Pettit, filed their petition in the Caldwell circuit court, praying a sale of said land and slaves and a division of their proceeds.
The court made an order appointing commissioners “to examine and value the estate of every description of Thomas G. Pettit, deceased, and that they ascertain the value of the interest of each of said infants, and report whether or not it would be to the interest of said infants if a sale of said lands and slaves were had, and that they report the condition of said estate.”
The commissioners made a report, in which it is recited that they were “ appointed by said court in said case, as commissioners to report the net value of the real and personal estate, and the profits (annual) thereof, of the infants in said suit.” But the report is in its details confined to the interests of the parties, and said wards in the estate of Thomas G. Pettit, and the annual profits thereof, and fails to inform the court as to such estate as they may have derived by descent from their mother or from other sources. The report also fails to state whether the interest of the infants required the sale to be made, as provided in the 86th chapter of the Revised Statutes; but instead thereof, the commissioners report “ that, in their opinion, a sale of said land and slaves *610 would redound, to the interest of said infant children, and to all concerned.”
The court having adjudged a sale of the property, James Cantrell became the purchaser of three hundred and sixty-two acres three roods and thirty-seven poles of the land, at forty-four dollars and eighty-five cents per acre, amounting to sixteen thousand two hundred and forty-six dollars and ninety-one cents, and James A. Johnson became the purchaser of the residue of the land at forty-five dollars per acre, amounting to nine thousand nine hundred dollars; and the slaves, 44 in number, appear to have produced the aggregate price of forty-seven thousand five hundred and fifty-five dollars.
In March, 1858, a report of said sales of the land and slaves was confirmed, and conveyances to the purchasers, Cantrell and Johnson, were acknowledged before the court, and approved and ordered to be properly certified for record. And afterwards, in June, 1861, a further report, showing the collection and distribution of the proceeds of tjfe sales, was confitmed by the court.
In April, 1862, James A. Cook and John G. Pettit brought suits on promissory notes they held against said James A. Johnson. Said Johnson, in an answer to the petition of Cook against him, alleged, as matter of defense, that the note sued on was a renewal of his bond for part of the purchase money for the land bought by him, including usurious interest exacted of him upon renewing the note, and insisted that the sale of the land was void for irregularity in the proceedings leading to it, particularly in the order appointing the commissioners to report as to the infant’s estate, and their failure to report the net value of the infanfs real and personal estate, and the annual profits thereof \ and whether the interest of the infants required the sale to be made.
*611 The said two suits were consolidated, and the answer of Johnson allowed to apply as an answer also to the suit of Pettit.
In June, 1862, Johnson exhibited his petition in equity against the heirs and devisees of Thomas G. Pettit, seeking to avoid his purchase of the land and also certain slaves bought by him, upon substantially the same grounds as presented by his answer in the suits of Cook and Pettit against him.
And in July, 1862, the said heirs and devisees of Thos. G. Pettit filed an amended petition in the original suit, in which the sales were adjudged, seeking to cure the supposed defects under and by virtue of the recent acts of the Legislature authorizing proceedings to remedy defects in sales of the real estate of infants, and praying that said sales, if defective, be confirmed, because they were beneficial to said infants. To this suit the various purchasers of the land and slaves were made parties; and several of the purchasers of the slaves being thus brought before the court, sought, by their answers and upon cross-pleadings, to avail themselves of the supposed irregularity in the proceedings to sell the slaves to avoid their purchases.
The several suits having been consolidated, were heard together, and the court adjudged, in substance—
1. That the sales of the slaves were valid.
2. That the sales of the land, upon the original proceedings, were null and void; and said Johnson refusing to accept title to the parcel of the land bought by him, the sale of the land as to him was held for nought, and an equitable account and adjustment ordered to be made between Johnson and Pettit’s heirs and devisees.
3. The purchaser, Cantrell, having failed to object to the confirmation of the sale, as sought by the heirs of Pettit, the same, as to him, was confirmed.
*612 From this judgment each and all of the parties have appealed to this court.
In regard to the sale of the slaves, it will be observed that, as the jurisdiction of the chancellor to order such sales of slaves is not conferred by the third article of chapter eighty-six of the Revised Statutes, the provisions of the second section of that article requiring the appointment and report of commissioners, and the execution of bonds by the guardians, as conditions of the validity of the sales of infants’ lands, do not apply to this proceeding, so far as the slaves are concerned.
But it is insisted for the appellants, the purchasers of the slaves, that the court did not, on the statements of the petition, have jurisdiction to order the sale of the slaves, and that the same is therefore void, the court only having jurisdiction to direct such a sale where it is shown that the slaves are not susceptible of a division in kind; and that there is no sufficient allegation in the petition of this fact, the only averment on the subject being “ that it would be impossible, under the present state of the estate of said Thomas G. Pettit, to effect a division of said estate, owing to the number of heirs and the small quantity of land, and the great injustice which would be done if said land was divided into small parcels.”
By section 1 of article 2, chapter 86, of the Revised Statutes, it is provided, that “ when slaves are held in joint tenancy or tenancy in common, or otherwise, by several parties, and cannot be divided in kind, a court of equity may, on the petition of the parties interested, decree a sale of such slaves and a distribution of the proceeds.”
Whether, for the supposed insufficiency of the petition, the decree of sale was not erroneous, and might not have been reversed upon an appeal to this court, it/is not necessary and would be extra-judicial now to decide; for *613 the question to be determined is, not whether the proceedings were irregular, but whether the sale was absolutely void, and such as passed no title to the purchasers.
The statutory enactment referred to is not prohibitory, or exclusive of the general jurisdiction of a court of equity to order a sale of slaves and a division of their proceeds upon the application or with the concurrence of all the parties interested. Such power is possessed by the court, independent of the provisions of the statute. But the manifest object and intention of the enactment referred to was, to enable joint or part owners of slaves to compel a sale where the slaves were not susceptible of a division in kind, without the consent of the other parties interested; not to render void an order of sale to which the parties themselves did not object, but which might have been successfully resisted upon the ground that the slaves were susceptible of a division.
We do not perceive that the court erred in its judgment as to the sale of the slaves, and it will be affirmed.
Whether the sales of the land were void for defective preparation of the suit in which they were adjudged, and if so, whether the amendatory proceedings in that case were sufficient to perfect the sale to Johnson, who sought to avoid his purchase, are the next questions to be considered.
It is insisted for both Johnson and Cantrell, that, for several reasons, the judgment directing the sale was not only erroneous, but absolutely void. But the principal defects suggested are those already referred to in the statement of this case, and relate to the order appointing the commissioners, required by section two, of article three, of the eighty-sixth chapter of the Revised Statutes, and to the report of those commissioners.
It is declared by said section, that “before a court shall have jurisdiction to decree a sale of infants’ lands, three *614 commissioners must be appointed to report under oath to the court the net value of the infants’ real and personal estate, and the annual profits thereof, and whether the interest of the infant or idiot requires the sale to be made.”
What we have already said of the order of appointment and report of the commissioners will suffice to show that neither of them is literally or substantially made in compliance with the requirements of the statute; and these defects, particularly in the commissioner’s report, are such as were held by this court in Wells vs. Cowherd’s heirs, 2 Metcalfe, 515, and in Mattingly’s heirs vs. Read, 3 Metcalfe, 524, and in other cases involving the construction of said statute, to render nugatory the judgment and sale for want of jurisdiction.
Whether a less rigid construction of the statute would better subserve the purposes for which it was enacted, we do not feel authorized to overrule the numerous decisions of this court by which this construction is sustained, although urged to do so by the distinguished counsel for the heirs of Pettit, in an argument of great plausibility and force.
We have next to consider whether the amendatory proceedings were sufficient to bind Johnson to abide by his purchase.
By an act of September 30, 1861, and an amendment thereto of March 1, 1862 (Myers’ Supplement, 424-5), in cases like this, where there are defects or errors in the proceedings in the procurement of the decree, which may vitiate the same, the guardian is authorized to file an amended petition in the court in which the proceedings were had, making the infants parties, and averring that such sale, as made, was beneficial and had redounded to the interest of such infants. Upon which, the *615 necessary facts being made to appear, the court is authorized to render a decree confirming the original decree and sale, rendering the same valid and binding.
The proceedings by amended pleading in this case seem to conform to the requirements of these acts, and we think the • court was fully authorized to adjudge a confirmation of the decree and sales, if the law, as applicable to a case like this, is of constitutional validity.
If there had simply been a confirmation of the sale and a delivery of the possession of the land to the purchasers, we incline to the opinion that, by said acts of the Legislature, the court was clothed with power to confirm the sales; and this view is, we think, in accordance with the construction given to the statute by this court in Thornton, &c., vs. McGrath, &c. (1 Duvall, 350). But it appears that both Johnson and Cantrell had, without objection, accepted deeds of conveyance of the parcels of the land purchased by them, which were made under the order of the court. To perfect and complete the title in them, it was, therefore, only necessary that the heirs of Pettit should be bound by the sale.
This the court was enabled to do by the acts of the Legislature, passed manifestly with a view to the protection of the rights of both parties, and not, so far as we are aware, in conflict with any constitutional provision.
In our opinion, the court erred in vacating, instead of confirming, the sale to Johnson; and it results, from this conclusion, that the judgment as to Cantrell should be affirmed.
Wherefore, the judgment in favor of James A. Johnson, on the appeal of Pettit’s administrator and heirs, is reversed, and the residue of the judgment is affirmed.